I'll hear United States v. Coelho. Good morning. Glenn Garber for Appellant Noel Coelho. And this appeal tests the limits of the government's advocacy in light of its competing obligation to adhere to the terms of a plea agreement. And it is our contention that the government crossed the line in this case in how it advocated for a stipulated guidelines, for a guidelines range that was above the stipulated guideline range in the plea agreement. Now, black letter law, it's contractual. There's special interests that come into play when you're dealing with plea agreements. What it advocated for was a victim enhancement that was agreed on in the plea agreement, correct? Well, in part that's correct. I mean, it is our position that what happened is the probation I understand what happened was then the PSR also urged a different enhancement for sophisticated means that had not been agreed to by the parties. That's right. All right. But the government didn't speak to that. It spoke to why your client should receive the victim enhancement. The net result of all of that was then a guidelines calculation higher than what was in the plea agreement. But that was because the district court adopted the sophisticated means recommendation, right? That's correct. And what So how did the government breach the agreement? It is our claim that when the pre-sentence report, the first disclosure came back and contained no victim enhancement but contained a sophisticated means, and there was no direct inquiry about sophisticated means or victim enhancement, the government then writes an e-mail to the probation department and advocates for the inclusion of the victim enhancement, which was in the plea agreement. The net effect of that was to cause the probation department to ramp up the stipulated guideline range to a level that was above the stipulated guideline range. Where in the plea agreement did the government agree not to urge a guideline range above that yielded by the enhancements in the plea agreement? Well, what the plea agreement says is that the government agreed not to in any way suggest that the probation office or the court consider a sentence above the stipulated guideline range. And the language, and there's a passage, okay, this is The language, isn't this the language, neither party will seek any departure or adjustment pursuant to the guidelines, nor will either party suggest that the probation office or the court consider such a departure or adjustment. Yes. That's the language. So the prior language in the whole passage, it's A83 to A84 in the appendix, and it's the plea agreement pages three to four. The parties agree that neither a downward or upward departure from the stipulated guideline range set forth above is warranted. Accordingly, neither party will Those are terms of art. Yes. And this wasn't a departure. Well, it's an adjustment, it's not, it's my belief from this that this is an adjustment that they're going along with. But it's an adjustment that they had always said and you had agreed that they could ask for. It was in the pre-sentence report that they would, that they would, that they argued that this adjustment was appropriate. And they continued to say so. By arguing for the victim enhancement and allowing the sophisticated means to remain in the pre-sentence report, or at least then go into the next pre-sentence report, the final that went to the court, it's our position that is suggesting to the court, okay, that the stipulated guideline range should be higher. But there's another layer, there's a couple of other layers to this. But in their sentencing memorandum, and this is on pages A157 and 158 of the appendix, the government then takes, well, states that the range of either 78 to 97, which is the stipulated guideline range as set forth in the plea agreement, or 97 to 121 months as set forth in the probation officer's report. And the government goes on to say the government respects and requests that the court impose a sentence at the top of the applicable guideline range. Now there is a caveat. I'm sorry. In the footnote. The government said, I thought your strongest argument was that they said at least as high as the top. Well, that, okay, that is part of it, too. Now, reading the case law and U.S. v. Vival in particular, it talks about all the circumstances in this holistic approach. And it's not just the government's direct words and it towing, you know, once it starts to tow a line with the plea agreement and crosses it even a little bit, that is a breach. My concern with your argument is that a fair reading of this suggests that they could not argue for any adjustment that was not reflected in this agreement. Yes. Okay? And they didn't. The adjustment that added to your client's guideline range was the one identified by the district court through the probation department. So while that may have resulted in a higher range than you and the government had agreed to, it was always understood from the plea allocution through sentencing that the district court remained free to calculate the guidelines differently from how you had. Correct? That's true. All right. So how do we have a violation here? I don't see how. I mean, you think you had an agreement that the government would not urge these adjustments if the probation department or the court came up with other adjustments that brought you to level 32 criminal history category one? We believe that once they got the probation report back, they should have remained silent because their advocacy for the victim enhancement had the obvious effect of raising that stipulated guideline range. And they have an obligation to protect that stipulated guideline range, which is the essential benefit that Mr. Quayleau bargained for, and then to go in their sentencing memo, and I think this is significant, to their hedging. They're basically saying it's either or. And although the plea agreement says we can't take a position, okay, it's either or now, and we want the top of whatever it is. And I do think that the net effect, practically speaking, is a signal by the government to the district court, we are not only fine with the higher range, which is beyond the stipulated guideline range that Mr. Quayleau bargained for, but also go to the top. And then at the sentencing, it says at least at the top. So you have to look at it holistically and look at what was taken from Mr. Quayleau. And look, Mr. Richenthal is a good advocate, okay, a strong lawyer, but these agreements are drafted by the government and these clauses are questionable in these types of circumstances, in the circumstances of this case, and they push the envelope. And what a defendant is getting from a plea agreement is essentially to curtail the government's advocacy in certain ways. And although they may be itching to get the court to go as high as they can, they have to constrain themselves. Did you argue for a downward departure? It was a 3-5-5-3 downward adjustment or downward variance. That was argued for by, actually, he argued for it, I believe, in the sentencing memo, but at the sentencing proceeding, the trial lawyer or the district court lawyer backed away from that and went within the low end of the guideline range. May I take you back to the language of your agreement, which I didn't have in front of me when you were reading it? I think it's the language at A83. What the parties agreed to is that neither a downward nor an upward departure from the stipulated guideline range set forth above is warranted. Now, downward or upward departure, we can agree, are terms of art. And the government did not urge an upward departure in this case, correct? All right. Then what they agreed is neither party will seek any departure or adjustment pursuant to the guidelines that is not set forth herein. That's where the adjustment language is that you quoted, right? All right. Now, that doesn't say that it won't seek an adjustment at odds with the guideline range discussed above. The guideline range language is only used in this agreement with respect to downward and upward departures. It's that they won't seek an adjustment not set forth above. And the adjustment set forth above to which you agreed is the victim enhancement adjustment. I don't see where you can argue to us that they agreed to seek no adjustment that yielded a different guideline range. Well, let's see. The length. Well, just tell me. It's a contract. Tell me where you agreed to that. The word adjustment, I think, is problematic here. Because if this was just limited to departures, the terms of art. Well, you're saying an adjustment is an enhancement under the guidelines, and assuming that, they agree not to seek any adjustment pursuant to the guidelines, no guideline adjustment, that's not set forth herein. What's set forth therein are the adjustments for offense level, for the amount of money involved, the loss, and there's an adjustment for victims. How is sophisticated? The argument is that they are implicitly arguing or signaling to the court sophisticated means is fine. Okay? And that's in violation of the plea agreement. So when they do the email. Where did they say anything about sophisticated means? In their sentencing memorandum, they say applicable range, and they're talking about either or. So they're signaling to the court that they are fine with the higher guideline range. And that higher guideline range is driven by sophisticated means. It's an implicit way of telling. What page are you referring to? A157 and 158 in the appendix. You're saying they argued for the sophisticated means enhancement. I'm saying that they are implicitly arguing for it or not arguing for it. And I think that one of the problems that maybe I have is that what is their affirmative obligation to protect the defendant in this situation? This is a unique situation where you have two enhancements that are in play here. And if the government of the probation department and the court adopt the sophisticated means, bang, we're in a higher stipulated guideline range. And what do they have to do to say, hey, how close is this line? Could you point us to that language again? How close is that line that I can watch? The language that you're saying shows the government's breach of the agreement. Okay. So in the beginning, in the preliminary statement of the sentencing memorandum, they say that the guidelines range. Where are you? The bottom. The bottom after Mercedes-Benz, the defendant has a United States sentencing guidelines range. Of either or. Of either. Either the plea agreement or what the probation report recommends. You're not allowed to do that, as opposed to saying 78 to 97, which is the agreement. You could swing the microphone. Sorry about that. Roger. Sorry. I'm at a loss. The government is simply acknowledging here that it's going to be one of two guideline ranges. Either the one they're submitting to the court, or they realize that the court has before it a probation report that's got a different recommendation. It's going to be the court's choice. It doesn't advocate for the second. The case law, I think, helps me a lot on this. And as Vival, it's Lawler. And these are cases that are cited in almost every breach of plea agreement case where they talk about you have to look at the conduct. And you have to look at all the circumstances. And although the government may not explicitly be advocating for sophisticated means, it's walking a fine line. And it's our position that it crossed it under these circumstances by saying to the court, hey, you now have options. And we're going to be, we're not allowed to say anything about sophisticated means. But you know what? You could do both ranges. And if you're going to do either, do the top of it. Do you have any language where the government advocated that the court adopt the higher of the two guideline ranges? Specifically saying adopt the higher range? In whatever words, do you have any language where the government advocated that the court go with the 97 to 121 rather than the 78 to the 97? The government consistently talks about the applicable guideline range. And then once the sentencing happens and Judge Sullivan is right on sophisticated means right in the beginning, the government is then in that range and is advocating for the top of that range. So it's using applicable. And I think that it's cognizant. At the rate, the sentencing plea agreement or the plea agreement rather expressly allows them to do. The parties reserved the right to argue where within the range decided by the court the defendant should be sentenced, didn't it? Didn't they? Once the court settles on a certain range, they are allowed to then advocate with that higher range. And indeed, outside of the guideline range, the agreement allows them to argue based on 3553A factors. That's true. That's true. I'll take you back a step. Where in your brief did you argue that the government's sentencing submission, the one we were talking about a moment ago, reflected a breach of the plea agreement? Well, it's contained in the statement of facts. And I believe it's in my- In the statement of facts, you said what happened. But I don't see anywhere in your argument that you argued that that manifested a breach. I mean, you know, we're here with the government arguing that you failed to raise any of this below, and therefore that we are at best on plain error review. I'm now asking you, where did you raise it in your brief to us? You mean in regard to the sentencing submission? In regard, yes. You've now said that the way they breached their agreement was in that sentence that you pointed us to in which they said that the guideline range would be either what was in the plea agreement or what was in the PSR. And I didn't see you arguing that that was the breach in your brief. Perhaps I overlooked it. Well, the breach starts with the e-mail, and the breach starts with the advocacy to the probation department about the victim enhancement without saying anything about the sophisticated means. Building off of, on top of that, is the sentencing memorandum. Did I argue it specifically in my brief? I was looking at this last night. It's clearly in my statement of facts. I think it's stated in passing in the argument. But facts is not an argument. I understand. But clearly what I'm arguing in my brief throughout and in my reply is this is a holistic approach, and you have to look at all of the government's conduct to understand whether or not they're sending signals to the district court that this is a request for a guideline range above the stipulated guideline range in violation of the plea agreement. So should I have highlighted that part more in my arguments? Probably. And I guess maybe it dawned on me last night that's significant, it's important. I don't think that it's not raised or part of this record, but I do think it's something you should take into consideration and shouldn't ignore, because then when the government goes in at the sentencing, it says at least at the top of the applicable guideline range and reiterates what's said in that sentencing memorandum. So construing strictly against the government, grave constitutional rights are taken away by a plea agreement. They have to walk a very fine line, and I think that they crossed it in this case, and you should find accordingly. Thank you. You're welcome. Good morning. I'm Assistant United States Attorney Daniel Richenbaugh. I represented the government for the district court. I represent the government on appeal. I'm going to be brief. I just want to . . . I have a question for you at the outset. I had a little bit of a problem with the fact that you argued for a sentence at least as high as the top of the guideline range, which inferentially is asking the judge to go above. When you say at least as high, it's saying you would do well to go still higher. Now, I must say I am somewhat puzzled by the meaning of the plea agreement. The plea agreement says, first of all, on one side it says, neither party will seek any departure or adjustment pursuant to the guideline range that is not set forth herein. Then it says, either party may seek a sentence outside the stipulated guideline range based upon factors to be considered under the section. What does that mean? Does that mean we won't argue for departure, but we can perfectly freely say to the judge, when you go above, call it a variance under Booker, Kimbrough, and Gall. Don't call it departure. Is that what that means? That we're free to argue for the maximum without any limit as long as we don't call it departure? We can just call it variance? Is that what it means? In short, Your Honor, yes. And that's true for both sides. The agreement, I think Your Honor is referring to A84, that's page 4 of the plea agreement, is very, very clear about two things. And they're distinct under this Court's case law. It's fine if the people you bargain with, if the defendants, understand that. But is that readily understood, that as long as I don't call it departure, I'm free to argue for any higher sentence? Judge, this is a really bad guy. Give him life. Put him away forever. And with no restrictions resulting from the neither party, that language is just meaningless, if that's what that means. We disagree it's meaningless, but let me just step back for one moment. I can't look in Mr. Cuello's head, so I can't comment on what he subjectively believed. But I can comment on what the language means. And we would direct, Your Honor, to the colloquy with Mr. Cuello at the time of his plea, when Judge Sullivan in great detail went over the plea agreement, went over what it meant, went over who it bound and who it did not bind, and specifically noted it did not bind him, that is the district court, that Mr. Cuello might well receive a sentence above the stipulated guideline range, that the district court might well calculate a guideline range. There's no question that he might receive a sentence above. It's a question of what the government will argue for. That's the issue. You're telling me that this plea agreement means the government is absolutely free to walk in and say to the judge, Judge, this is a bad person. You should argue. You should sentence him to the very, very maximum that you possibly can. Yes. The government is free to argue for up to the statutory maximum pursuant to the second full paragraph, excuse me, the first full paragraph on page 883 of the appendix, and the defendant is free to argue to the statutory minimum, which here was zero. The parties agreed on one thing and one thing only, what the range is and, to be more precise, how the range should be calculated. They expressly, on both sides, it's equal, were free to argue for a sentence below the range? It's fine. If defendants, I guess this is a standard form, isn't it? It is a standard form, Your Honor, and it's plain that in this particular case, the defendant's advocate, which was not Mr. Garber, understood that. And the reason I say that is because he initially asked for a sentence below the guideline range, understanding he was free to do so. The government advocated for a higher sentence, as is quite common for the district court. I do want to respond, though, to the point about applicable versus not applicable and what it means with two points. So, first, what this appeal is about is whether the government's conduct violated the plea agreement, not whether it could have used better language here and there. But if there was any doubt about what that language meant, it's resolved by two things. First, the footnote that Mr. Garber left out of his argument, which makes very clear not only is the government merely pointing out the fact that there are two ranges, one in the plea agreement and one in the PSR, but that the government is expressly not taking a view on sophisticated means and doing so because of the plea agreement. The footnote says that. And if there were further any doubt about what exactly that meant, I would respectfully point this panel to page A325 of the appendix, which is page 43 of the sentencing transcript. I'm sorry. What page? Page A325, so appendix 325, which is page 43 of the sentencing transcript. That's the moment during the sentencing proceeding itself in which the government was talking about its position. And it again used the phrase the guideline range or the applicable range. But so that there would be no doubt about what the government was, in fact, saying, it talked about the top of that range being 97 months. That's the top of the government's range. That's the top of the range in the plea agreement. There was no doubt before the district court what the government was saying, even if the government's sentencing memorandum, devoid of context, might have left some doubt. There's no breach here because the plea agreement let the parties advocate for whatever sentence they thought appropriate. They advocated for very different sentences. There's no question Mr. Quayle preferred a lower sentence. But the question is did the government breach the plea agreement by advocating for a higher one successfully? And the answer is no. There's nothing in the agreement that prohibited what the government did. But even if one were to say perhaps there could be, because it is construed against the drafter, Mr. . . . Wouldn't it be a violation of the plea agreement for the government when the government has agreed based on certain adjustments, basic defense level and certain adjustments to a guideline range of 78 to 97, and then the probation office inserts another upward adjustment so that the guideline range will now be higher than the one that was agreed to in the plea agreement? Wouldn't it be a violation of the plea agreement to advocate the court to adopt that higher guideline range rather than the one that was in the plea agreement? Yeah. If . . . In Your Honor's hypothetical, if the answer is the probation office has already made a determination to include an enhancement to which the parties didn't agree and the government were to take a position in front of the district court as to whether that was appropriate, yes. And that's effectively what happened in Lawler. But it's not what happened here. And it's important to recognize this is a dynamic process. The probation office submits a draft PSR. The draft PSR, incorrectly in our judgment, not just because it's in the plea agreement, incorrectly as a matter of law, does not include an enhancement to which the parties agreed. The government points out that error to the probation office. It's been invited to do so pursuant to the federal rules of criminal procedure and has a deadline to do so. It says nothing about sophisticated means. The defendant's free to say something or not say something. It's his choice. The government stands mute on that issue. The probation office ultimately agrees with the government. That is, the enhancement the parties agreed to is appropriate. It also continues to include an enhancement to which the parties didn't agree. The government didn't ask for it to continue to do that. It chose independently to do so. When sentencing comes, the district court has an obligation, under this court's precedence, to come to its own independent analysis of what the guidelines are. And Judge Sullivan advised Mr. Cuello of that at his plea colloquy. And Judge Sullivan did that and specifically referenced sentencing of co-defendants and the facts of this case, went through his analysis, and concluded independently he too, like the probation office, felt sophisticated means was appropriate. He asked if the government had any comment. The government had none, zero, again stood mute. There's just no breach. But I want to make two related points.  Plea agreements must be construed against the drafter. Here are the government. But this panel is here on plain error review. Even if one could argue that maybe there was a breach under some construction of this language, it surely was not plain or obvious to anyone before the district court. And therefore, it fails the first step of plain error. But the second point I want to make is, even if this court were to assume arguendo that there was a breach and that it was in fact plain, Mr. Cuello cannot show prejudice. On page 24 of our brief, we refer to what the district court talked about when the district court talked about the sophisticated means enhancement. And Judge Sullivan was very precise. He had presented over the sentencing of every co-defendant. And he talks about how he had analyzed the facts before those co-defendants and the facts of this case, and he made an independent determination. It was warranted here. On this record, where Mr. Cuello was the leader of the scheme, it is not possible that anything anyone could have said would have dissuaded the district court from giving an enhancement to the leader that he had given to multiple co-defendants. In fact, the leader's brother, Erezmendi Cuello, is one of the sentencings to which Judge Sullivan referred. There was a vehement argument. The transcripts docketed on the record about whether that was appropriate, and Judge Sullivan decided it was. On this record, where the district court is familiar with the facts of the case across co-defendants . . . But I understand the error to be that the district court would not have added the victim enhancement, but for what is being charged as government breach. The district court would have reached the top guideline of 97 by applying the sophisticated means enhancement, not the victim enhancement. So I'm running out of time, but if I'd like to answer Your Honor's question. Because we're on plain error, it's the defendant's burden to demonstrate that that's so. But that doesn't fit the facts of the case. And it doesn't fit the facts of the case because Mr. Cuello was sentenced last. And this enhancement was included for . . . And by this, to be precise, I'm referring to the victim enhancement. This enhancement was included in the plea agreement of all defendants and was assessed by the district court against all defendants and by the probation office. And so the argument that if the government had not pointed out what was apparent on the face of the plea agreement and it happened with respect to every co-defendant, Judge Sullivan wouldn't have realized that the leader also deserved the same enhancement, we submit just doesn't fit the facts of this case. Thank you. Mr. Garber. Yes. So I did mention the footnote, by the way. They had the caveat in the sentencing memorandum about we're not taking a position on sophisticated means. It's on the bottom of page A-157. I might have gotten cut off, but I was starting to . . . I think I did say it. But I may have overemphasized, okay, the part in the statement of facts about the sentencing memorandum. However, this, at least at the top of the applicable guideline range, that is not only stated in the sentencing memorandum, but it's reiterated at the sentencing, and I do highlight that in my argument section of the brief. But I think that it's very important to understand them together, coupled also with the e-mail, because what the government is essentially saying, we'll use the term applicable guideline range, but we all know here that it's above the stipulated guideline range, and then they went further by saying at least as long as the top. And I think that that is problematic, not only for the sentencing memorandum, but the sentencing and the way the government made those arguments because they're signaling to the court, look, we're okay with your higher range and even higher, and even higher. The government is saying that they were perfectly free to argue for a range above what you had agreed to as long as they didn't say it's a departure as opposed to a variance that's authorized by Booker, Kimbrough, and Gaul. Far from clear from the agreement. And certainly when Judge Sullivan is addressing the agreement, I apologize for that. I usually am not accused of talking too low, but this is a big courtroom. My apologies. Clearly did not address that aspect of the plea agreement. Clearly did not make that apparent. And I do think that that is problematic, and I've been doing this for a long time. I don't know what that language means exactly and what the government can or can't do in this context, but I do think if they go beyond what would be the expectation of Mr. Qualo. What was the justification for the defendant arguing for a downward departure? His family circumstance primarily. What was the justification in terms of the plea agreement? The plea agreement said that under 3553A, the defendant can ask for a downward variance, and I believe the terminology that the defense used was downward variance, but I don't think it's clear exactly what that means from the government's point of view, at least for the defendant and how far they could advocate for it. The defendant was completely aboard with the proposition that either party can argue for above or below without any limit as long as you don't call it departure but variance. Is that right? The defense took that position in the sentencing memo but not at the sentencing proceeding. Thank you. Thank you. Thank you both.